Mayor, etc., and Fourth National Bank *v.* Potomac Ins. Co.

THE MAYOR AND CITY COUNCIL OF NASHVILLE and THE FOURTH NATIONAL BANK *v.* THE POTOMAC INSURANCE COMPANY.

1. BONDS. *Coupons on city bonds. Profert of bonds.* In a suit upon a coupon, profert of the bonds, the stipulations of which being set forth in the declaration, is not necessary.

See Mayor, etc., of Nashville *v.* The First National Bank, 1 Baxter, 402.

2. SAME. *Same. Demand and protest. Not necessary.* To maintain a suit upon coupons demand and protest is not necessary, though they be in the form of orders. They circulate as, independent securities.

See Mayor, etc., of Nasville *v.* The First National Bank, 1 Baxter, 402.

3. SAME. *Same. Liability of City. When.* The City will be liable in a suit upon the coupons, though they show no promise or undertaking on the part of the Mayor and City council, since the Mayor and City council are bound for the payment by the terms of the bonds.

4. GARNISHMENT. *Answer of garnishee conclusive. When.* Where the amount exceeds $50, the answer of the garnishee at law is conclusive.

Cases cited : Moore *v.* Green, 4 Hum., 299; Drane *v.* McGavock, 7 Hum., 132; Moses *v.* McMullen, 4 Cold., 242; Foster *v.* Saffeff, 1 Swan, 90; Conner *v.* Allen, 3 Head, 418.

5. SAME. *Same. Liability of garnishee.* The liability of the garnishee is to be arrived at, not by surmises and inferences, but by direct admissions and conclusions following necessarily therefrom.

Case cited : Moses *v.* McMullen, 4 Cold., 245.

SAME. *Same. Pleading and Practice. Doubt as to garnishee's indebtedness.* Where it is doubtful whether the garnishee owes the debtor, the question must be solved in the garnishee's favor, but in proceedings by attachment or garnishment bill in Chancery, the same may be contested by proof.

Case cited : McCrae *v.* Bank of Tennessee and Vance, 6 Cold., 474.

7. SAME. *Same. Garnishee not liable to judgment. When.* If the

garnishee owes the debtor, but the debtor owes him a larger sum, the garnishee will not be liable to a judgment upon these facts.

Cases cited: Arledge v. White, 1 Head, 241; Fay v. Reager, 2 Sneed, 200; Johnson v. Hoyle, 3 Head, 56; Fain v. Jones, 3 Head, 308.

---

### FROM DAVIDSON.

---

Appeal from the Circuit Court.   NATHANIEL BAXTER, Judge.

JOHN LELLYETT for the Bank.

GUILD & SMITH for the Company.

McFARLAND, J., delivered the opinion of the Court.

This action was brought by the Potomac Insurance Company, against the Mayor and City Council of Nashville and the Nashville and Chattanooga Railroad Company. Judgment was had for the plaintiff against both defendants. The Railroad Company have acquiesced in the judgment, but the Mayor and City Council prosecute a writ of error, and the error assigned is in the action of the Court, in overruling its demurrer to the declaration. The action is upon one bond, and in a second count upon sixty coupons. The bond was made profert of, and is alleged to be the bond of the Mayor and City Council, issued under their corporate name at the time, payable to the Nashville and Chattanooga Railroad Company, and by said Company endorsed, and the payment thereof

guaranteed; that the bond was issued under proper authority of law in aid of the Railroad Company as an internal improvement measure.

The second count makes profert of sixty coupons, alleged to have been cut from bonds of a similar character, the numbers of which are given. One of these is set out on profert, in the demurrer, in the following form:

"$30. To the Cashier of the Phœnix Bank, New York: Pay the bearer Thirty dollars, being half a year's interest, due 1st ———, 18—, on bond No. ———, Nashville .R. R. bonds.

"V. K. Stevenson, Pres't."

Stevenson was President of the Nashville and Chattanooga Railroad.

The grounds of the demurrer are, 1st, that profert is not made of the several bonds, the stipulations of which are set forth in the declaration. 2nd, that as the coupons are in the form of orders, no suit can be maintained without demand and protest; and 3d, that the coupons show no promise or undertaking on the part of the Mayor and City Council.

These objections have all been disposed of at the present term, in the case of *The Mayor and City Council* v. *The First National Bank.*

In the count suing upon the bond, that one bond is made profert of. In the count suing upon the coupons, they are made profert of; but the bonds from which they are alleged to have been cut are not made profert of. This we held unnecessary, that

Mayor, etc., and Fourth National Bank *v.* Potomac Ins. Co.

the coupons circulate after they are detached as independent securities.

It is true these coupons, taken alone, do not purport to be the obligations of the Mayor and City Council, but it is averred they are the coupons from a number of bonds made under authority of law by the Mayor and City Council; that although the coupons are signed by Stevenson, President of the Railroad Company, the Mayor and City Council are also bound for their payment by the express terms of the bonds themselves. Upon the demurrer the allegation that these coupons were cut from bonds of this character must be taken as true. To sustain this allegation it was not necessary to make profert of the bonds.

The argument that there is nothing to protect the Mayor and City Council from the payment of any coupons, that bear the form and signature of these, whether lawfully issued, on part of their bonds or not, is not sound. The coupons are parts of the bond, if genuine; were signed by Stevenson, under proper authority of the Mayor and City Council, and they are as much bound to know, whether or not they are genuine, as if they were signed by one of their own officers.

The allegation of the declaration that they are genuine and taken from the lawful bonds, upon demurrer, must be taken as true. How the fact was established upon the trial it is not necessary to en-

quire, as there is no bill of exceptions. There is no error in the judgment, and it will be affirmed.

An execution was issued upon the judgment, and the Fourth National Bank was summoned to appear and answer the questions prescribed under the Statute for garnishees.

The Bank answered, that "On the 23d day of August, 1871, at the time of issuing the garnishment, the Bank did not owe the Nashville and Chattanooga Railroad any thing, but, on the contrary, the said Railroad owed the Bank a considerable sum of money. The Bank did not then have in its possession or control any effects or property of said Chattanooga Railroad Company; nor has it had since any property or effects of said Railroad; nor does it know of any person who did at that time, or since, have in their possession or control any property or effects of said Railroad Company, or who owed or does owe it any thing.

"It is proper to state, however," continues the answer," that W. A. Gleaves, treasurer, has an account with the bank; that he, as such treasurer, on the day of the service of said garnishment, had to his credit $11,825.51, and if his account shall be construed to mean the account of the Chattanooga Railroad Company, then it had that sum to its credit on that day, nominally; but in fact and truth the said Chattanooga Railroad Company, at that date and ever since, has owed the bank a much larger sum of

money than the balance to his credit on that day or any day since."

This answer was made September 5th, 1871. The plaintiff obtained leave to file additional interrogations, and in answer to these, the bank, among other things, said: "I suppose he (Gleaves) was, at the time of making said deposit, treasurer of the Nashville and Chattanooga Railroad Company, but I do not actually know the fact. My best impression or opinion is, that the money was the money of said Company, but how the fact may turn out I do not know. The Nashville and Chattanooga Railroad Company, as I understand it, in the name of W. A. Gleaves, treasurer, has had an account with the bank for some time. All moneys and accounts have been kept in the name of W. A. Gleaves, treasurer, and from the nature of the business and accounts, I supposed said Gleaves was doing business with us as the treasurer of said company. The funds have passed out on his checks as treasurer. The debts to the bank from the Chattanooga Railroad Company were created by loans or discounts from time to time, in the usual way of doing such business; the said $11.825.51 mentioned was not, at the time of said service transferred to the bank for what the company owed the bank, or for its indemnity. The bank had not, before the service of said garnishment, appropriated any of said $11,825.51 to what the company owed the bank. Gleaves, as treasurer, could, at the time of said service, have drawn out the

funds on his check, as it was to his credit as such treasurer. The bank has paid out all of said sums upon the check of Gleaves, *treasurer*, but not on an arrangement with the Chattanooga Railroad Company, but upon an indemnity of the Mayor of the city of Nashville."

This is the substance of the entire answer, and upon this the Court gave judgment against the bank, from which it has appealed.

It is well settled that where the amount exceeds fifty dollars the answer of the garnishee at law is conclusive. See 4 Hum., 299; 7 Hum., 132; 4 Cold., 242; 1 Swann, 90; 3 Head, 418.

The liability of the garnishee is not to be arrived at by surmises and inferences, but from direct admissions or conclusions, necessarily following therefrom. *Mores* v. *McMullan*, 4 Cold., 245.

There is some doubt, to say the least of it, whether this answer contains a distinct admission that the amount of the deposit in question was due the railroad company. If the proceeding had been by attachment or garnishment bill in Chancery, the question might have been contested by proof. *McCrae* v. *Bank of Tennessee and Vance*, 6 Cold., 474.

But in this proceeding, if the answer fails to admit facts sufficient to entitle the plaintiff to a judgment, then he must resort to some other proceeding.

For the argument, however, we will concede that this answer, in substance admits that the funds deposited in reality belonged to the railroad company; but

the answer, at the same time, distinctly avers that if this be so, the railroad company owed the bank a still larger sum.  We understand it to be settled that if the garnishee owe the debtor, but the debtor owes him a larger sum, the garnishee·will not be liable to a judgment upon these facts.    See on this subject, *Arledge* v. *White,* 1 Head, 241; *Fay* v. *Reager,* 2 Sneed, 200; 3 Head, 56; *Fain* v. *Jones,* 3 Head, 308.

The deposit was a general deposit.    There was no specific sum of money in bank that could be identified as the money of the railroad company; it simply constituted a charge against the bank in favor of the railroad company to that amount.    It is true the bank admits·that it had not transferred this sum or appropriated it to the payment of the amount due it from the railroad company, nor do we think this necessary. If there was mutual, independent debts between them, the larger amount being due the bank, upon general principles the bank could not, upon garnishment, be compelled to pay the amount due the railroad company, disregarding the liability of the latter to the bank.

It is argued that it does not appear what the debts owing to the bank were, or that they were due.    The answer is that the railroad company owed the bank an amount larger than the deposit.    The presumption is that the debts were due, or it could not be in strictness said that the debts were owing; but if this were even doubtful, the doubt must be solved in favor of the garnishee, for if it be doubtful whether the garnishee owes the debtor, there can be no judgment.

It is true that in the amended answer the banker says that at the date of the service of the garnishment, Gleaves, treasurer, could have drawn out the fund upon his check. We can only reconcile this with his former statement that at the time the railroad company owed the bank an amount larger than the deposit, upon the assumption that the bank would have voluntarily paid out on the checks of Gleaves the amount of the deposit, notwithstanding they held larger debts against the company; if so, this would give the creditor of the road no right to force the bank to do this. They might, if they choose, waive their legal rights and pay the checks of the railroad company, without funds, but as to the creditors, they could stand upon their legal rights. And this view may also explain the fact that the bank has, since the garnishment, paid out the funds upon the checks of Gleaves, or as it is said, the bank was indemnified against loss on this account.

As we understand the answer, there is no admission that the bank owed the railroad company at the date of garnishment or since an amount greater than the debts of the railroad company due to the bank. Without this there can be no judgment against the bank. Upon the answer, had the plaintiff been in a Court of Chancery, it might have contested the truth of this answer, but here the answer is conclusive. The judgment will be reversed and the bank discharged.